**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

CHAMBERS OF
STEPHANIE A. GALLAGHER
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

December 28, 2012

LETTER TO COUNSEL:

      RE:    *Danielle N. Jordan v. Commissioner, Social Security Administration*;
                Civil No. SAG-10-3334

Dear Counsel:

      On November 24, 2010, the Plaintiff, Danielle N. Jordan, petitioned this Court to review the Social Security Administration's final decision to deny her claim for Supplemental Security Income. (ECF No. 1). I have considered the parties' cross-motions for summary judgment, and Ms. Jordan's reply. (ECF Nos. 16, 22, 23). I find that no hearing is necessary. Local Rule 105.6 (D. Md. 2011). This Court must uphold the decision of the agency if it is supported by substantial evidence and if the agency employed proper legal standards. 42 U.S.C. §§ 405(g), 1383(c)(3); *see Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will grant the Commissioner's motion and deny Plaintiff's motion. This letter explains my rationale.

      Ms. Jordan filed her claim on September 5, 2007, alleging disability beginning on August 16, 2006. (Tr. 86). Her claim was denied initially on February 8, 2008, and on reconsideration on May 20, 2008. (Tr. 49-52, 57-58). A hearing was held on January 16, 2009 before an Administrative Law Judge ("ALJ"). (Tr. 21-46). Following the hearing, on March 27, 2009, the ALJ determined that Ms. Jordan was not disabled during the relevant time frame. (Tr. 10-20). The Appeals Council denied Ms. Jordan's request for review (Tr. 1-3), so the ALJ's decision constitutes the final, reviewable decision of the agency.

      The ALJ found that Ms. Jordan suffered from the severe impairments of borderline intellectual functioning, a bipolar disorder, an attention deficit hyperactivity disorder, a generalized anxiety disorder, and a borderline personality disorder. (Tr. 12). Despite these impairments, the ALJ determined that Ms. Jordan retained the residual functional capacity ("RFC") to:

> perform medium work as defined in 29 CFR 416.967(c) except she is limited to unskilled work composed of simple, routine, repetitive tasks. She can meet time and attendance standards without undue interruptions. Further, she can interrelate with supervisors and can respond appropriately to work settings.

(Tr. 14). After considering the testimony of a vocational expert ("VE"), the ALJ determined that Ms. Jordan could perform jobs that exist in significant numbers in the national economy, and that she was therefore not disabled during the relevant time frame. (Tr. 18-19).

*Danielle N. Jordan v. Commissioner, Social Security Administration*
Civil No. SAG-10-3334
December 28, 2012
Page 2

Ms. Jordan presents three primary arguments on appeal, each with several sub-arguments: (1) that the ALJ failed to properly evaluate three of the four functional areas relating to her mental impairments; (2) that the ALJ failed to evaluate Listing 12.05; and (3) that the ALJ's RFC was not supported by substantial evidence. Each argument lacks merit.

First, Ms. Jordan submits that the ALJ erroneously evaluated the effect of her mental impairments on her activities of daily living ("ADLs"), her social functioning, and her concentration, persistence, and pace. With respect to her ADLs, Ms. Jordan complains that the ALJ relied on her adult function reports in lieu of medical source opinions. However, despite Ms. Jordan's "functional illiteracy," her function reports are legible and clear, and nothing invalidates the reports as accurate sources of information about her functional capacity. *See* Tr. 175-182. Moreover, there is no requirement that medical source opinions be used to evaluate activities of daily living. Such a requirement would be illogical, because most medical sources obtain information about activities of daily living solely from their patients. With respect to social functioning, Ms. Jordan asserts that her limitations are "more than moderate" because of the "extreme" behavior noted by the ALJ. She also argues that her GAF scores in 2008 reflect serious impairments in her social functioning.[1] However, GAF scores do not measure social functioning alone. It cannot be assumed, simply because an individual has a low GAF score, that she has marked limitation in social functioning as opposed to a psychological or occupational issue. With respect to concentration, persistence, and pace, Ms. Jordan avers that her limitations should be classified as "marked." However, it is clear from the ALJ's detailed analysis that he appropriately considered the evidence with respect to her impairment and concluded that her limitations are moderate. My role is not to re-weigh the evidence, but simply to determine whether the ALJ's conclusion is supported by substantial evidence. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972) (citations omitted). Accordingly, I find no basis for remand.

Ms. Jordan's second argument is that the ALJ failed to evaluate Listing 12.05, which addresses mental retardation. The relevant subsections of Listing 12.05 require, "A valid verbal, performance, or full scale IQ of 60 through 70." *See* Listing 12.05(C) & (D). Ms. Jordan submits that evaluation of the Listing was required, in part, because her scores on two separate IQ tests met those standards. Cl. Mot. at 27-33. Where there is factual support that a Listing could be met, an ALJ must analyze whether the Claimant's impairment meets or equals the Listing. *See Cook v. Heckler,* 783 F.2d 1168, 1173 (4th Cir. 1986). However, "[u]nder *Cook*, the duty of identification of relevant listing impairments and comparison of symptoms to Listing criteria is only triggered if there is ample evidence in the record to support a determination that the claimant's impairment meets or equals one of the listed impairments." *Ketcher v. Apfel,* 68 F.Supp.2d 629, 645 (D. Md. 1999); *see also Russell v. Chater*, 1995 WL 417576, *3 (4th Cir. July 7, 1995) ("*Cook*, however, does not establish an inflexible rule requiring an exhaustive point-by-point discussion in all cases."). Here, the ALJ's opinion evidences his rejection of the

---

[1] GAF scores reflect the quality of an individual's psychological, social, and occupational functioning on a mental health continuum. *See* American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 1994).

*Danielle N. Jordan v. Commissioner, Social Security Administration*
Civil No. SAG-10-3334
December 28, 2012
Page 3

validity of the IQ tests, which are a necessary component to meet Listing 12.05. *See, e.g.,* Tr. 16 ("Over the next seven years, psychological testing was conducted on several occasions, each of which noted great resistance to being tested and likely devaluation of both intelligence and personality testing due to this."); *Id.* ("WAIS-III testing showed IQ scores of 70 Verbal, 79 Performance, and 72 Full Scale; however, Dr. Miller noted that her performance was non-effortful and that she complained about the tests."); Tr. 17 ("Throughout Ms. Jordan's medical history, mental health providers have noted her resistance to testing and the seemingly inevitable understatement of her intellectual capabilities and emotional stability."). It is clear that the ALJ's opinion therefore contains the implicit conclusion that Ms. Jordan does not meet Listing 12.05, and the ALJ's analysis provides substantial evidence to sustain that conclusion.

Finally, Ms. Jordan contends that the ALJ's RFC was not supported by substantial evidence. Her argument has three sub-parts: (1) that the ALJ erred in assigning weight to Drs. Miller and Pruss; (2) that the ALJ's adverse credibility finding was incorrect; and (3) that the record did not support Ms. Jordan's ability to lift the weight required to perform medium work. None of the three sub-arguments is persuasive.

Ms. Jordan submits that the ALJ afforded too much weight to the opinion of Dr. Miller and too little weight to the opinion of Dr. Pruss. Dr. Miller performed a psychological evaluation of Ms. Jordan. (Tr. 374-381). The ALJ noted that "His conclusions are consistent with the medical record and provide justifications for the conclusions drawn." (Tr. 17). Ms. Jordan disagrees with Dr. Miller's conclusions that she can handle simple instructions and can interrelate with supervisors. Cl. Mot. at 35. However, the ALJ's analysis provides substantial evidence to support his assignment of "great weight" to Dr. Miller's opinion.

In contrast to the detailed information contained in Dr. Miller's opinion, the opinion of Ms. Jordan's treating provider, Dr. Pruss, contains precious little information. A treating physician's opinion is not entitled to controlling weight if it is inconsistent with the other substantial evidence. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). The ALJ noted that Dr. Pruss's opinion, provided via a form, contains almost no notes or details to justify his checked ratings. (Tr. 17). In one of his only written notes, Dr. Pruss stated, "I am not an expert on disability evaluations," which serves to undermine the validity of his rankings of Ms. Jordan's functional abilities. (Tr. 479). Moreover, even Dr. Pruss does not completely foreclose the possibility of employment, in stating that Ms. Jordan "must undergo specific assessment regarding re-training potential for specific types of employment." (Tr. 481). The ALJ thoroughly described his reasons for affording Dr. Pruss's opinion "no probative weight to the extent that it is inconsistent with the medical record." (Tr. 18). I find the ALJ's assignment of weight to be supported by substantial evidence.

Ms. Jordan asserts that the ALJ's credibility finding was in error. The Fourth Circuit has developed a two-part test for evaluating a claimant's subjective complaints. *Chater*, 76 F.3d at 594. First, there must be objective medical evidence of a medical impairment reasonably likely to cause the symptoms alleged by the claimant. *Id.* After the claimant meets this threshold

*Danielle N. Jordan v. Commissioner, Social Security Administration*
Civil No. SAG-10-3334
December 28, 2012
Page 4

obligation, the ALJ must evaluate "the intensity and persistence of the claimant's [symptoms], and the extent to which it affects [her] ability to work." *Id.* at 595. The ALJ followed that process in this case. He determined that Ms. Jordan's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (Tr. 15). However, he did not find Ms. Jordan's statements as to the intensity, persistence, and limiting effects of her symptoms to be credible. *Id.*

In his credibility analysis, the ALJ provided an extensive summary of Ms. Jordan's hearing testimony and her previous statements to physicians about her symptoms. (Tr. 15). He continued with an extensive review of the medical findings. (Tr. 15-17). He cited Ms. Jordan's conservative treatment with counseling and medications, the lack of need for any psychiatric hospitalizations, the repeated notations that Ms. Jordan resisted testing, causing "seemingly inevitable understatement of her intellectual capacities and emotional stability," and the fact that Ms. Jordan, after many tries, was able to pass a written driving examination. (Tr. 17). Specifically, the ALJ concluded that "while the claimant's impairments are severe, the undersigned finds that her statements describing the degree of impact on her ability to function are not entirely credible, especially when contrasted with her extensive list of admitted activities of daily living, described above." *Id.* The comprehensive analysis provided by the ALJ provides substantial evidence to support his credibility conclusion.

Finally, Ms. Jordan contends that the record does not support her ability to perform medium work, which requires frequent lifting up to 25 pounds and occasional lifting up to 50 pounds. However, the record contains no physical limitations for Ms. Jordan. Her past work as a retail cashier and stocker involved lifting up to 50 pounds and was medium exertion. (Tr. 41). Moreover, even if the ALJ's conclusion about her lifting capacity were in error, the error would be harmless because the VE also suggested jobs, within Ms. Jordan's RFC, that constitute only "light work." (Tr. 43).

For the reasons set forth herein, Plaintiff's motion for summary judgment (ECF No. 16) will be DENIED and the Commissioner's motion for summary judgment (ECF No. 22) will be GRANTED. The Clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as an opinion. An implementing Order follows.

Sincerely yours,

/s/

Stephanie A. Gallagher
United States Magistrate Judge